UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

FARMEDHERE, LLC, an Illinois
Limited Liability Company,

        Plaintiff,

v.

JUST GREENS, LLC, d/b/a AERO
FARM SYSTEMS, LLC, a Delaware
Limited Liability Company

        Defendant.

Civil Action No. 1:14-cv-00370

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
OR, ALTERNATIVELY, TO STAY THIS ACTION
PURSUANT TO FED. R. CIV. PROC. 12(B)(3)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. *ii*

PRELIMINARY STATEMENT ............................................................................................ 1

I. THIS COURT LACKS JURISDICTION TO DETERMINE
WHETHER FARMEDHERE'S CLAIMS ARE ARBITRABLE .................................. 1

II. THIS ACTION SHOULD BE STAYED BECAUSE THE PARTIES
AGREED TO ARBITRATE THE CLAIMS ASSERTED HEREIN ............................ 5

    A. FARMEDHERE IS BOUND BY THE ARBITRATION CLAUSE ................. 5

        *Farmed Here Assumed The Distribution Agreement* ........................................ 6

        *Farmedhere Is Bound By Arbitration Based On Estoppel* ............................... 7

    B. FARMEDHERE'S CLAIMS ARE WITHIN THE SCOPE OF THE
ARBITRATION CLAUSE ................................................................................. 9

III. THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION
OR OTHERWISE STAY THIS ACTION TO AVOID INCONSISTENT
RESULTS AND DUPLICATION OF JUDICIAL RESOURCES ............................. 14

CONCLUSION ..................................................................................................................... 15

#381682.1

# TABLE OF AUTHORITIES

Page(s)

**CASES**

American Bureau of Shipping v. Tencara Shipyard S.P.A.,
   170 F. 3d 349 (2d Cir. 1999) .................................................................................................... 8

Baychar, Inc. v. Frisby Techs.,
   2001 U.S. Dist. LEXIS 11037 (D. Maine 2001) ................................................................ 10, 11

Bayer CropScience AG v. Dow AgroSciences LLC,
   2012 U.S. Dist. LEXIS 97850 (E.D. Va. 2012) .................................................................. 12, 13

Colarado River Water Conservation District v. United States,
   424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ............................................................. 14

conTeyor Multibags Sus. N.V. v. Bradford Co.,
   2006 U.S. Dist. LEXIS 55898 (W.D. Mich. 2006) ............................................................ 11, 12

Continental Gas Co. v. American Nat'l. Ins. Co.,
   417 F.3d 272 (7th Cir. 2005) .................................................................................................. 2, 5

Dean Witter Reynolds Inc. v. Byrd,
   470 U.S. 213 (1985) ................................................................................................................ 10

Deloitte Noraudit A/S v. Deloitte Haskins & Sells,
   9 F.3d 1060 (2d Cir. 1993) .................................................................................................... 8, 9

Ezlinks Golf, Inc. v. Brown,
   2013 WL 1285651 (N.D. Ill., March 27, 2013) ..................................................................... 2, 5

Faulkenberg v. CB Tax Franchise Sys. LP,
   637 F.3d 801 ............................................................................................................................. 5

Faulkenberg v. CB Tax Franchise Sys. LP,
   637 F.3f 801, 806 (7th Cir. 2011) .............................................................................................. 2

First Options of Chicago, Inc. v. Kaplan,
   514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1985) ......................................................... 15

Lawn v. Franklin,
   328 F. Supp. 791 (S.D.N.Y. 1971) ........................................................................................... 5

Life Technologies Corp. v. AB Sciex PTE, Ltd.,
   803 F. Supp. 2d 270 (S.D.N.Y. 2011) ...................................................................................... 8

Matter of D&B Constr. of Westchester (Mitrione),
 21 Misc.3d 1125 (A), 875 N.Y.S.2d 819 (Sup. Ct. Westchester Co. 2008) ............................ 6

Merrill Lunch, Pierce, Fenner & Smith, Inc. v. Lauer,
 49 F.3d 323 (7th Cir. 1995) ..................................................................................... 1, 3, 4

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
 473 U.S. 614 (1985) ........................................................................................................ 9

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
 460 U.S. 1 (1983) .......................................................................................................... 10

Oppenheimer & Co. v. Deutsche Bank AG,
 2010 U.S. Dist. LEXIS 19655 (S.D.N.Y. 2010) ......................................................... 7, 8

Personal Communications Devices, LLC v. HTC America, Inc.,
 970 NYS2d 370 (Sup. Ct., Suffolk Co. 2013) ................................................................ 6

Phoenix Cos., Inc. v. Abrahamsen,
 2005 U.S. Dist. LEXIS 43615 (S.D.N.Y. 2006) ............................................................ 8

Reliance Ins. Co. v. Raybestos Prods. Co.,
 382 F. 3d 676 (7th Cir. 2004) ........................................................................................ 15

Snyder v. Smith,
 736 F.2d 409 (7th Cir. 1984) ........................................................................................... 2

The Ayco Co. v. Wolfgang K. Frisch,
 2012 U.S. Dist. LEXIS 2112 (N.D.N.Y. 2012) .............................................................. 8

Thomson-CSF, S.A. v. Am Arbitration Ass'n.,
 64 F.3d 773 (2d Cir. 1995) .......................................................................................... 7, 8

United Steel-workers of Am. V. Warrior & Golf Navigation Co.,
 363 U.S. 574 (1960) ...................................................................................................... 10

**STATUTES**

35 U.S.C. Section 294 .............................................................................................................. 13

Federal Arbitration Act ................................................................................................... 3, 4, 5, 9

Fed. R. Civ. Proc. 12(b)(3) ............................................................................................ 1, 2, 3, 5

**Preliminary Statement**

Defendant Just Greens, LLC d/b/a AeroFarms ("AeroFarms"), submits this Reply Memorandum of Law in further support of its motion to dismiss the complaint of plaintiff FarmedHere, LLC ("FarmedHere") or, alternatively, to stay this action pursuant to Fed. R. Civ. Proc. 12(b)(3). As set forth more fully below, FarmedHere's opposition raises no issue of fact or law which would preclude the relief requested by AeroFarms. Indeed, strikingly absent from FarmedHere's opposition is any denial that it obtained AeroFarms' trade secrets, patented technology, training and other confidential and proprietary information from AeroFarms as a result of the Distributor Agreement. Instead, FarmedHere addresses irrelevant issues, misstates the law, and ignores salient facts, all of which mandate dismissal or stay of these proceedings.

I. **THIS COURT LACKS JURISDICTION TO DETERMINE WHETHER FARMEDHERE'S CLAIMS ARE ARBITRABLE**

In support of its motion to dismiss, AeroFarms first argued that this Court lacks jurisdiction to determine whether FarmedHere's claims must be arbitrated and, therefore, its complaint must be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(3). That argument was premised on the well-settled principle that only a court within the district in which the arbitration is to be held -- in this instance, New York – may determine whether the parties agreed to arbitrate the particular claims asserted. See, e.g., Merrill Lunch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323 (7th Cir. 1995). Where, as here, a defendant has asserted that a plaintiff's claims are subject to arbitration in another district, dismissal is the appropriate remedy. Id. at 327. ("[i]ntervention from the Northern District of Illinois court simply adds another layer, when dismissal of this action to allow for a judicial determination of arbitrability in Florida district court...would have avoided parallel proceedings and promoted the conservation of judicial

#381682.1

resources"). See also, Snyder v. Smith, 736 F.2d 409, 4419-420 (7th Cir. 1984) (district court dismissed case because it was precluded from determining arbitrability in light of forum selection clause in another district); Ezlinks Golf, Inc. v. Brown, 2013 WL 1285651 (N.D. Ill., March 27, 2013) ("the proper procedure is for [defendant] to bring a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3)"); Faulkenberg v. CB Tax Franchise Sys. LP, 637 F.3f 801, 806 (7th Cir. 2011) ("a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district"); Continental Gas Co. v. American Nat'l. Ins. Co., 417 F.3d 272 (7th Cir. 2005) (district court properly dismissed the case "because the forum selection clauses in the…[contracts]…required arbitration in other districts; we have held that dismissal under these circumstances to be appropriate…under Fed. R. Civ. Proc. 12(b)(3)").

Unable to refute this settled law, FarmedHere instead argues that neither FarmedHere's New York petition, nor AeroFarms' New York cross-petition, specifically raised the claims FarmedHere has asserted in this action (violation of the Lanham Act, declaration of patent invalidity and unfair competition). FarmedHere's argument misses the point. While the claims presently subject to the New York action are virtually the same or overlap significantly, none of the case law cited above, requiring dismissal of a case where an agreement contains a provision requiring arbitration in another district, holds that an application to stay/compel arbitration in the proper forum must have already been brought. The law is that only the court sitting in the arbitration forum has jurisdiction to rule on arbitrability.

2

FarmedHere's argument is nothing but a straw man to avoid the critical inquiry: whether the arbitration clause at issue requires arbitration in another forum/district. If it does, then this Court, being outside of that district, lacks jurisdiction to determine the issue of arbitrability or hear this case, and it must dismiss it pursuant to Fed. R. Civ. Proc. 12(b)(3). For this jurisdictional analysis, it matters not what claims were brought, where they were brought or which were brought first.

FarmedHere next argues that this Court has jurisdiction to decide the arbitrability of its claims because there is disagreement as to whether FarmedHere is bound by the arbitration clause and whether FarmedHere's claims are within the scope of that arbitration clause. FarmedHere's argument makes no sense. The very purpose of the cases cited by AeroFarms is to provide the procedural mechanism of dismissal so that only the court in the same district in which the arbitration is to be brought may decide the issues of arbitrability – including issues concerning whether a party is bound by arbitration clause and the scope of that arbitration clause. Indeed, whether a party is bound by an arbitration clause and whether the specific claims asserted fall within the scope of that clause are virtually always the issues to be decided on a motion to compel/stay arbitration. Accordingly, FarmedHere's argument that "courts decide the arbitrability of a plaintiff's claims before granting or denying a motion to dismiss" (FarmedHere Mem. at 6), puts the chicken before the egg, runs counter to the expressed purpose of the holdings of the above cases, and its application here would render Section 4 of the Federal Arbitration Act and the precedents of this Circuit decided thereunder a nullity.

Furthermore, FarmedHere's attempt to distinguish the case law cited by AeroFarms in support of its position fails. In <u>Merrill Lynch, Pierce, Fenner & Smith v. Lauer</u>, 49 F.3d 323 (7th

3

Cir. 1995), defendants were account holders with Merrill Lynch and signed a "customer agreement" which required arbitration of any claims. Plaintiff filed an action in the Illinois district court to compel arbitration in Illinois and for an order directing the defendants to eliminate their claims for punitive damages as well as for any claim involving investments made more than six years before the complaint was filed. The district court declined to compel arbitration in Illinois and held that defendants must eliminate their claim for punitive damages as well as any claim more than six years old. On appeal, the Seventh Circuit specifically held that although "federal courts are charged with the initial task of interpreting the arbitration agreement to determine whether the parties agreed to arbitrate the particular dispute," (Id. at 326), "[Section 4 of the FAA] clearly requires a geographic link between the site of the arbitration <u>and the district which, by compelling arbitration or directing its scope, exercises preliminary control."</u> Id. at 328 (emphasis added). The Seventh Circuit further held that "...interpreting Sec. 4 as mandatory with respect both to compelling arbitration and to reviewing the arbitrability of claims is equally consistent with principles of judicial economy," and that "[o]ur ruling does not leave Merrill Lynch without an outlet to challenge what they contend are improper attempts by the Lauers to arbitrate nonarbitrable disputes; it merely leaves the decision on these challenges to the district court in Florida..." Id. at 329, 330. This language, which specifically mandates that only a district court in the district in which the arbitration is required to be brought may exercise jurisdiction concerning the threshold issue of arbitrability and determining the scope of the claims to be arbitrated, defeats FarmedHere's argument that this Court must first determine

arbitrability before deciding the motion to dismiss. Accord, Lawn v. Franklin, 328 F. Supp. 791, 793 (S.D.N.Y. 1971) (judicial control of proceedings should emanate from forum district).[1]

Accordingly, the question of whether FarmedHere agreed to arbitrate the claims filed in this case cannot be determined by this Court, and this case should therefore be dismissed pursuant to Fed. Rule Civ. Proc. 12(b)(3).

## II. THIS ACTION SHOULD BE STAYED BECAUSE THE PARTIES AGREED TO ARBITRATE THE CLAIMS ASSERTED HEREIN

Assuming arguendo that this Court has jurisdiction to decide issues of arbitrability, FarmedHere is bound by the arbitration clause contained in the Distributor Agreement and that the claims asserted herein are within the scope of that arbitration clause. Thus, this action should be dismissed, or in the alternative, stayed pending arbitration.

### A. FarmedHere is Bound by the Arbitration Clause

Contrary to FarmedHere's misguided characterization, AeroFarms has not merely "offered a smattering of allegations" "short of a full showing of an accepted theory" for holding a non-signatory bound by an arbitration agreement. Despite its rhetoric, FarmedHere fails to address the key facts which subject it to the arbitration clause contained in the Distribution Agreement.

---

[1] The other cases cited by AeroFarms merely stand for the proposition that where a party contends that a non-forum court cannot determine arbitrability under Sec. 4 of the FAA, the proper procedure is dismissal, rather than an application to stay or compel arbitration. That proposition is not disputed and, therefore, FarmedHere's attempt to distinguish this authority is misguided. See, e.g., Ezlinks Golf, Inc. v. Brown, 2013 WL 1285651 (N.D. Ill., March 27, 2013) (where parties agreed to arbitrate in state other than Illinois, "the proper procedure is for [plaintiff] to bring a motion to dismiss for improper venue pursuant to Fed. R. Civ. Proc. 12(b)(3)"); Faulkenberg v. CB Tax Franchise Sys. LP, 637 F.3d 801, 806 (7th Cir. 2011 ("a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district"); Continental Gas Co. v. American Nat'l Ins. Co., 417 F.3d 272 (7th Cir. 2005) ("…the forum selection clauses in the…[contracts]…required arbitration in other districts; we have held that dismissal under these circumstances to be appropriate…under Fed. R. Civ. Proc. 12(b)(3)").

#379728.1

*Farmed Here Assumed the Distribution Agreement*

FarmedHere was formed for the specific purpose of serving as Hardej's "farm development/operating company" (Cross-Petition at Exhibit D). After Hardej formed FarmedHere on August 6, 2011, he specifically informed AeroFarms that FarmedHere had been formed and that it would be the operating company for purposes of future communications and, in fact, all communications from Hardej which pertained to AeroFarms' patented technology and trade secrets referred to FarmedHere, and no other entity (Cross-Petition Exhibit F; Hardej Reply Aff., ¶¶ 5-11). After its formation, FarmedHere undertook the obligations, albeit unsuccessfully, of the Distribution Agreement. FarmedHere has presented no evidence to dispute these contentions. Based on these facts, it follows that FarmedHere assumed the Distribution Agreement with AeroFarms and that FarmedHere was acting in Cityponic's stead.

FarmedHere's attempt to distinguish the facts of the case law cited by AeroFarms regarding assumption by a non-signatory, e.g., Personal Communications Devices, LLC v. HTC America, Inc., 970 NYS2d 370, 376 (Sup. Ct., Suffolk Co. 2013), does not mean that assumption is not a valid and well-recognized legal theory applicable to this case.[2] FarmedHere erroneously argues that there cannot be any assumption here because Cityponic "was not a corporate entity that ceased to exist by reason of a merger" (FarmedHere Mem. at 12). FarmedHere misses the point -- Cityponic never existed in the first place. FarmedHere essentially stepped into the shoes of the non-existent entity, obtained the benefits of AeroFarms' patented technology, trade secrets, training and information, and therefore assumed the obligations under the Distribution

---

[2] Similarly, FarmedHere wastes a lot of ink factually distinguishing cases that were merely cited by AeroFarms for the general and undisputed proposition that a non-signatory may be bound to arbitrate when the court finds that the parties' conduct or positions bring the non-signatory within one of the five recognized exceptions. See, FarmedHere Mem. at 8, citing, The Republic of Irac v. ABB AG, 769 F. Supp. 2d 605, 612 (S.D.N.Y. 2011); and Matter of D&B Constr. of Westchester (Mitrione), 21 Misc.3d 1125 (A), 875 N.Y.S.2d 819 (Sup. Ct. Westchester Co. 2008).

6

#379728.1

Agreement, including the obligation not to misappropriate AeroFarms' proprietary information and technology. These circumstances are vastly different from those presented by the cases cited by FarmedHere, see, e.g., Thomson-CSF, S.A. v. Am Arbitration Ass'n., 64 F.3d 773 (2d Cir. 1995) (holding that a parent company was not bound by the arbitration agreement signed by its subsidiary where the parent company expressly disavowed the obligations contained in the agreement"), and weigh heavily in favor of a finding that FarmedHere assumed the Distribution Agreement and the arbitration clause contained therein.

### *FarmedHere Is Bound by Arbitration Based on Estoppel*

FarmedHere acknowledges that "[u]nder the estoppel theory, a company knowingly exploiting the benefits of an agreement with an arbitration clause can be estopped from avoiding arbitration despite never having signed the agreement." (FarmedHere Mem. at 10), citing, MAG Portfolio Consult, GMGH v. Merlin Biomed Group, LLC, 268 F.3d 58, 61 (2d Cir. 2001).

FarmedHere nowhere disputes that it obtained AeroFarms' trade secrets, patented technology and training -- such confidential information would only have been provided pursuant to the terms of the Distribution Agreement. These are far more that "indirect benefits" or "the mere fact of a nonsignatory's affiliation with a signatory," Oppenheimer & Co. v. Deutsche Bank AG, 2010 U.S. Dist. LEXIS 19655 (S.D.N.Y. 2010). Such benefits were the very essence of the Distribution Agreement, and constitute material consideration tendered by AeroFarms under the Agreement. FarmedHere unsuccessfully tries to avoid this point when it claims that it obtained AeroFarms' information through the Equipment Leases (which do not include an arbitration clause). However, the Equipment Leases only provided FarmedHere with equipment -- they did not provide for the disclosure of patented technology, trade secrets,

training and other confidential information, which were all derived – directly -- from the Distribution Agreement. FarmedHere was in possession of the Distribution Agreement and made use of the information obtained therefrom by infringing upon AeroFarms' patented technology and trade secrets.

The Second Circuit was presented with similar facts in Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d 1060, 1064 (2d Cir. 1993), which concerned an agreement containing an arbitration clause that governed the terms of use of a trade name. A non-signatory received a copy of the agreement, raised no objection to it and made use of that trade name pursuant to the agreement. The Second Circuit held that the non-signatory was estopped from arguing it was not bound by the arbitration clause in the agreement. Id. at 1064. Other cases which support AeroFarms' estoppel theory, and curiously are cited by FarmedHere, include American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F. 3d 349 (2d Cir. 1999) (investors were bound by arbitration clause under estoppel theory because they received the following benefits under the agreement containing the arbitration clause: lower interest rates and the ability to sail under the french flag); Life Technologies Corp. v. AB Sciex PTE, Ltd., 803 F. Supp. 2d 270 (S.D.N.Y. 2011) (affiliate of signatory to agreement was bound by arbitration clause contained therein because it received a license to use a trademark and used those trademarks in commerce).[3]

After FarmedHere was in possession of AeroFarms patented technology and trade secrets derived from the Distribution Agreement, FarmedHere attempted to enter into a license

---

[3] The other cases cited by FarmedHere, all outside of this district, involve indirect or non-existent benefits and are therefore factually inapposite. See, e.g., Thompson-CSF, S.A., 64 F.3d 773 (2d Cir. 1995) (benefit of parent company in keeping its subsidiary from competing was the result of the acquisition, not of the agreement containing the arbitration provision); Phoenix Cos., Inc. v. Abrahamsen, 2005 U.S. Dist. LEXIS 43615 (S.D.N.Y. 2006); The Ayco Co. v. Wolfgang K. Frisch, 2012 U.S. Dist. LEXIS 2112 (N.D.N.Y. 2012); Oppenheimer & Co. v. Deutsche Bank AG, 2010 U.S. Dist. LEXIS 19655 (S.D.N.Y. 2010) (all involving indirect benefit to parent securities firms resulting from agreements entered into by subsidiary/broker-dealers).

agreement with AeroFarms for rights to that very same intellectual property (Cross-Petition at Exhibit F). When those negotiations failed, FarmedHere continued to make use of AeroFarms' intellectual property and, like the defendant in Deloitte, should be estopped from arguing it is not bound by the arbitration clause in the agreement. FarmedHere cannot deny that it would never have obtained AeroFarms' confidential information had it not been for the Distribution Agreement. It cannot have it both ways: it cannot reap the benefits of exploiting for free the intellectual property belonging to AeroFarms, yet avoid the obligation to arbitrate contained in the contract which transferred that same intellectual property.

Thus, FarmedHere misses the point in its opposition papers when it refers to the Equipment Leases and communications between the parties before August 2011. It is the Distribution Agreement which FarmedHere assumed and it was a result of the Distribution Agreement that FarmedHere received AeroFarms' valuable intellectual property. Therefore, Farmedhere is bound by the arbitration clause contained in the Distribution Agreement.

B.  **Farmedhere's Claims are within the Scope of the Arbitration Clause**

FarmedHere also argues that even if it were bound by the Distribution Agreement, the claims asserted in this case do not fall within the scope of the arbitration clause. FarmedHere further argues that "[t]he issue of the scope of the arbitration clause of the Distribution Agreement is especially problematic with regard to [FarmedHere's patent invalidity claim.]" (FarmedHere Mem. at p. 7). FarmedHere is incorrect. "Congress enacted the Federal Arbitration Act to guarantee the enforcement of private contracts by which parties agree to arbitrate disputes rather than litigation them." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985). Congress favors arbitration agreements because

9

arbitration of disputes tends to avoid "the costliness and delays of litigation." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 220 (1985). The enactment of the FAA was "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Therefore, there is a federal presumption of arbitration which dictates that, as a matter of federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration..." (Id.). In the absence of any express provision excluding a particular grievance from arbitration...only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." United Steelworkers of Am. V. Warrior & Golf Navigation Co., 363 U.S. 574, 584-5 (1960).

As to whether patent infringement or patent validity claims fall within an arbitration clause, if the arbitration clause is broad, such claims must be arbitrated. For example, in Baychar, Inc. v. Frisby Techs., 2001 U.S. Dist. LEXIS 11037 (D. Maine 2001), the parties entered into a confidentiality agreement allowing plaintiff to use defendant's patented technology in conjunction with plaintiff's own patented design for waterproof footwear. The confidentiality agreement contained an arbitration clause, providing that "any controversy or claim under or in relation to this Agreement...shall be resolved by binding arbitration..." Id. at ___. Defendants began using plaintiff's proprietary information in violation of the confidentiality agreement. Plaintiff then sued in federal court for breach of contract, patent infringement, and misappropriation of trade secrets, and defendant moved to compel arbitration. The Court held that the arbitration clause was broad on its face and that it did not specify that certain types of disputes are non-arbitrable. The Court further held that "if the arbitration clause

#379728.1

specifically stated that it did not apply to patent infringement cases, then plaintiff's argument would prevail." However, the Court concluded that "the clause makes arbitrable any claim under or in relation to the...Confidentiality Agreement" (noting that the phrase "arising under" is narrower than other possible phrases such as "arising out of or relating to"). Id. The Court also held that "the factual allegations that serve as the foundation to plaintiff's breach of contract and misappropriation claims are the same facts that support plaintiff's patent infringement claim":

> Plaintiff's allegations that defendants have been using proprietary information developed by [plaintiff] to produce and market their own PCM-treated Three-Layered Composites. The Confidentiality Agreement was created to protect the parties' proprietary information; it is the alleged abuse of proprietary information that gives rise to the patent infringement claim."

Id. at ___. Thus, the Court found that the "Confidentiality Agreement and patent infringement claim are related to one another" and concluded that such claims must be arbitrated. Id.

Similarly, in conTeyor Multibags Sus. N.V. v. Bradford Co., 2006 U.S. Dist. LEXIS 55898 (W.D. Mich. 2006), the parties entered into a license agreement whereby plaintiff licensed to defendant its "confidential know-how, trade secrets and technical information" relating to automobile products. The license agreement contained the following arbitration provision: "Any and all disputes or claims arising out of or in connection with this Agreement or the breach thereof, shall be referred to a mediator...before resorting to arbitration." Id. at ___. After the license agreement was terminated, plaintiff sued defendant in federal court for patent infringement and misappropriation of trade secrets and simultaneously commenced an arbitration for breach of contract for unpaid royalties. After a third party who did not sign the license agreement was dropped from the case, plaintiff moved to compel arbitration of all claims. The Court held that "to ascertain the arbitrability of an issue, a court must consider whether there is

11

#379728.1

an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract." Id. at 7 (citations omitted). Applying the general principal that "courts must resolve all doubts over the arbitrability of an issue in favor of arbitration," the Court held that the disputed issues…are "at the very least arguably within the arbitration clause." The Court further held that "the patent, alleged to have been infringed, and the trade secrets, alleged to have been misappropriated, were purportedly licensed to [defendants] pursuant to the license agreement." That agreement provided that "upon the expiration or termination of this Agreement, [defendant] shall cease the manufacture, promotion, and sale of products covered by…the Licensed Patents and shall also cease to utilize in its manufacturing processes or otherwise make use of all the Technical Information….supplied by Plaintiff under this Agreement." Id. at ___. The Court therefore concluded that defendant's "continued manufacturing and selling of [plaintiff's] patented devices and its alleged continued use of [plaintiff's] proprietary information arise out of or are connected to the license agreement" and "are not expressly exempt from arbitration by the terms of this contract." Id. In so holding, the Court rejected defendant's argument that the patent infringement and misappropriation claims were separate and distinct from the agreement.

The case of Bayer CropScience AG v. Dow AgroSciences LLC, 2012 U.S. Dist. LEXIS 97850 (E.D. Va. 2012), is also analogous. There, the parties entered into a patent license agreement which contained the following arbitration clause: "any controversies or disputes in connection with this Agreement which cannot be amicably settled by the parties shall be decided by arbitration…" Id. at ___. After the agreement was terminated, plaintiff sued defendant in federal court for, among other things, patent infringement, and defendant moved to dismiss based

12

#379728.1

upon the arbitration clause. The Court held that "to decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." Id. at 9 (citations omitted). To make its determination, the Court employed the standard three-part test: (1) whether the parties have made an agreement to arbitrate; (2) the scope of the agreement; and (3) whether the claims are arbitrable. The Court concluded that plaintiff's patent claims were arbitrable, holding that "the parties clearly have agreed to arbitrate….the scope of that Arbitration Clause is very broad…and under 35 U.S.C. Section 294, patent infringement claims are expressly arbitrable." Id. at ___. Furthermore, the Court noted that "case law supports Defendant's position that patent infringement claims sufficiently connected to the License Agreement may be, and should be, arbitrated. Notably, Plaintiff's counsel conceded at oral argument that if an arbitrator found that Defendants did not violate the License Agreement, Plaintiffs would not have valid patent infringement claims. It is logical that breach of the License Agreement and infringement of the patents covered by the same License Agreement would be addressed in the same proceeding." Id.

The arbitration clause at issue here provides that "any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration to be held in the State of New York…" Given this broad clause and based on the above legal authority, FarmedHere's patent validity claims, as well as its Lanham Act and IDTPA claims, are subject to arbitration.

13

#379728.1

## III. THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OR OTHERWISE STAY THIS ACTION TO AVOID INCONSISTENT RESULTS AND DUPLICATION OF JUDICIAL RESOURCES

FarmedHere argues that "[a]bstention is inappropriate here because the New York Court will decide only the arbitrability of AeroFarm's six claims; it will reach no rulings concerning FarmedHere's claims." (FarmedHere Mem. at 14). It cannot be disputed that all of the parties' claims arise from the same nucleus of operative facts. Moreover, AeroFarms' claims of breach of contract, misappropriation of trade secrets and patent infringement significantly overlap and/or mirror FarmedHere's claims of patent invalidity and misappropriation relating to the true owner of the technology at issue. This identity of facts and overlap of legal issues warrant the avoidance of two separate actions so as to conserve judicial resources and ensure consistent results. While FarmedHere has purposely avoided asserting its claims in the New York arbitration thus far, it certainly can and has the right to do so. Therefore, the salutory purpose underlying the abstention doctrine would best be served by declining to exercise jurisdiction pending a resolution of arbitrability by the New York court.

With regard to the factors set forth in Colarado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), FarmedHere selectively addresses only a few of them. FarmedHere ignores the first factor – the order in which jurisdiction was obtained by the concurrent forums – because the New York arbitration was filed first. The second factor, avoidance of piecemeal litigation – also weighs heavily in favor of abstention. The issue of arbitrability has now been fully briefed before the New York court and a decision is expected imminently. Moreover, as noted in Point I above, New York is the only forum with jurisdiction to decide the issue of arbitrability. Convenience of the forum clearly

14

favors New York, because AeroFarms is located in New York, and the parties chose New York as their forum to resolve their disputes. Finally, FarmedHere misrepresents whether state of federal law govern the issues. FarmedHere argues that federal law governs its Lanham Act and patent claims, but it is the issue of arbitrability which is to be determined by the New York court. Whether the parties have agreed to arbitrate is a question "governed by state law principles governing contract formation." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1985); Reliance Ins. Co. v. Raybestos Prods. Co., 382 F. 3d 676, 678-9 (7th Cir. 2004). Because this is a state law issue, and New York is the exclusive form to decide it, this Court should abstain pending resolution by the New York Court.

## Conclusion

For all of the foregoing reasons and principles of law, FarmedHere's Complaint should be dismissed in its entirety, or in the alternative, stayed pending a resolution of the New York Action as to whether FarmedHere's claims, in whole or in part, must be arbitrated.

Dated: May 1, 2014

Respectfully submitted,

JUST GREENS, LLC d/b/a AEROFARM SYSTEMS, LLC

By: /s/ Dana
Dana M. Susman
One of Its Attorneys
dsusman@kanekessler.com
KANE KESSLER, P.C.
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

James D. Ossyra (ARDC# 6186512)
jossyra@daspinaument.com
DASPIN & AUMENT, LLP
227 West Monroe Street, Suite 3500
Chicago, Illinois 60606
(312) 258-1600

15

#379728.1