IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FARMEDHERE, LLC, an Illinois )
Limited Liability Company, )
)
Plaintiff, )
)
v. ) No. 14 C 370
)
JUST GREENS, LLC, d/b/a AERO )
FARM SYSTEMS, LLC, a Delaware )
Limited Liability Company, )
)
Defendant. )
)

**MEMORANDUM OPINION AND ORDER**

JAMES F. HOLDERMAN, District Judge:

On January 17, 2014, Plaintiff FarmedHere, LLC ("FarmedHere") filed a three-count

complaint (Dkt. No. 1, "Compl." or "Complaint") against Defendant Just Greens, LLC, d/b/a

Aero Farm Systems, LLC ("AeroFarms"). In the Complaint, FarmedHere purports to allege

violations of the Lanham Act (Count I) and the Illinois Uniform Deceptive Trade Practices Act

(Count II) against AeroFarms. (*Id*. ¶¶ 36-60.) Additionally, FarmedHere requests a declaratory

judgment that AeroFarm's U.S. Patent No. 8,533,992 (the " '992 Patent") is invalid or that

FarmedHere did not infringe on the '992 Patent (Count III). (*Id*. ¶¶ 61-67.)

FarmedHere's first two claims are based on allegations that AeroFarms (1) claimed as its

own various FarmedHere achievements and (2) lied about its affiliation with FarmedHere. (*Id*.

¶¶ 36-60.) FarmedHere seeks a declaratory judgment on the '992 Patent due to AeroFarms filing

a notice of arbitration with the Judicial Arbitration, Mediation, and ADR Services ("JAMS").

1

(*Id*. ¶¶ 61-67.) In the JAMS proceeding, filed in New York, New York, AeroFarms alleges

FarmedHere infringed on the '992 Patent among other claims. (*Id*.)

Before the court is AeroFarms' "Motion to Dismiss Plaintiff's Complaint or,

Alternatively, to Stay this Action pursuant to Fed. R. Civ. Proc. 12(b)(3)" (Dkt. No. 12, the

"Motion to Dismiss"), accompanied by a supporting memorandum (Dkt. No. 13, "Def's Mem.").

In both filings, AeroFarms states the Complaint must be dismissed because this court lacks

jurisdiction to determine whether FarmedHere's claims are arbitrable. (*Id*. at 6-9.) For the

reasons set forth below, this court grants AeroFarms' Motion to Dismiss without prejudice.

## BACKGROUND

**AeroFarms' Factual Assertions**

AeroFarms developed a method of aeroponic farming to locally grow produce in urban

environments. (Def's Mem. at 1.) On February 1, 2011, AeroFarms entered into a distribution

agreement with CityPonic, LLC (Cross-Petition, Ex. B., the "Distribution Agreement" or

"Distrib. Agrmt.")[1] Under the Distribution Agreement, AeroFarms agreed to provide CityPonic

with equipment, technology, trade secrets and training, for AeroFarm's aeroponic system. (*Id*.)

Paul Hardej ("Mr. Hardej") signed the Distribution Agreement on behalf of CityPonic, LLC

("CityPonic"). (*Id*.)

Under the Distribution Agreement, CityPonic pledged to use its "best efforts" to develop,

market, and promote the sales of AeroFarms aeroponic system in a defined territory. (*Id*. § 5.)

CityPonic represented it would not "directly or indirectly, design, license, manufacture or sell

---

[1] All references to the "Cross Petition" refer to the Cross-Petition, verified by Edward Harwood of AeroFarms on February 28, 2014, and the exhibits annexed thereto. Defendant's supporting memorandum (Dkt. No. 13) attaches a Declaration from Dana M. Susman (Dkt. No. 13, Ex. 1, the "Susman Decl."), and the Cross-Petition is attached to this declaration (Susman Decl., Ex. 1).

any products that are similar or competitive with" AeroFarm's system. (*Id*. § 2(c).) CityPonic also represented that the information AeroFarms provided would be kept confidential, and CityPonic would not attempt to "copy, replicate, imitate or reverse-engineer" any of AeroFarm's products. (*Id*. § 10.)

Mr. Hardej, as Managing Partner of CityPonic, described the company as "a corporation organized and existing under the laws of the State of Illinois with its head office located at: 329 W. 18th St., Suite 501, Box 7, Chicago Illinois, 60616." (*Id*. at pg. 1.) Moreover, the Distribution Agreement also contained a representation and warranty that CityPonic "is a company duly organized and validly existing under the laws of Illinois and is duly qualified to conduct its business as presently conducted". (*Id*. § 21.)

In spite of these representations, Mr. Hardej had yet to form CityPonic. (Cross-Petition, Ex. C.) Instead, Mr. Hardej emailed Edward Harwood of AeroFarms, on the same day the Distribution Agreement was entered into, to inform him that Mr. Hardej would "organize the company this weekend and forward Sec. of State confirmation to you." (*Id*.)

Rather than formally incorporate CityPonic, Mr. Hardej formed FarmedHere on August 6, 2011. (Cross-Petition, Ex. D.) Mr. Hardej stated "[w]e started a new entity, which is the farm development/operating company called FarmedHere". (*Id*.) Mr. Hardej later requested that AeroFarms substitute FarmedHere for CityPonic in invoices, which AeroFarms had sent to Mr. Hardej. (*Id*.)

Documents AeroFarms has provided the court indicate that Mr. Hardej played a key role in FarmedHere's corporate management and relationship with AeroFarms. For example, Mr. Hardej drafted a letter of intent dated September 9, 2011 to "utilize AeroFarms equipment component technology to build a vertical farm in the Chicago metro area." (*Id*., Ex. F.) There,

Mr. Hardej expressed FarmedHere's intent (1) "to build either a larger single use system or a dual-system (aero-aquaponics) unit using the AeroFarms technology and/or own aquaponic technology" and (2) to use AeroFarm's technology "in the form of either the cloth growing surface spray system and/or specialized LED lighting." (*Id*.) Significantly, Mr. Hardej signed this letter of intent as FarmedHere's "Chief Executive Officer". (*Id*.)

AeroFarms argues, based on the above documents, that Mr. Hardej created FarmedHere to reap the benefits AeroFarms provided him under the Distribution Agreement. (Def's Mot. at 4-5.) According to AeroFarms, FarmedHere stepped into CityPonic's shoes, at Mr. Hardej's direction, to exploit AeroFarms' aeroponics system. (*Id*.) AeroFarms, consequently, believes FarmedHere is bound to and assumed the obligations of the Distribution Agreement. (*Id*.)

The Distribution Agreement contains a section entitled "ARBITRATION", which states "[a]ny controversy or claim arising out of or relating to this contract or the breach hereof shall be settled by arbitration to be held in the State of New York in accordance with the law in this jurisdiction, and judgment upon the award rendered by the arbitrators may be entered in any Court having jurisdiction thereof." (Distrib. Agrmt. § 27.)

**Procedural History**

As a result of the harms AeroFarms claims to have suffered, it filed a demand for arbitration and statement of claim against CityPonic, FarmedHere, and Mr. Hardej with JAMS in New York on December 23, 2013. (Cross-Petition, Ex. A.) There, based on the Distribution Agreement's arbitration clause, AeroFarms asserted claims for breach of contract, unjust enrichment, fraud, misappropriation of trade secrets, unfair competition, and patent infringement. (*Id*.)

Instead of responding to AeroFarms' demand for arbitration, on January 21, 2014, FarmedHere filed a Petition for Stay of Arbitration in the Supreme Court for the State of New York (the "New York Action"). (Susman Decl., Ex. 2.) In both the New York Action and this litigation, FarmedHere contends that it was not a party to the Distribution Agreement, is not subject to the Arbitration Clause, and therefore should not be compelled to arbitrate its claims. (*Id.*; Dkt. No. 18, Pl's Resp.)

On January 21, 2014, FarmedHere also filed its Complaint in this action. Again, FarmedHere purports to allege that AeroFarms violated the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act, by claiming as its own various FarmedHere achievements and lying about its affiliation with FarmedHere. (Compl. ¶¶ 36-60.) FarmedHere also seeks a declaration that AeroFarms' '992 Patent is invalid or, alternatively, that FarmedHere has not infringed on the '992 Patent. (*Id.* ¶¶ 61-67.)

In AeroFarms' Motion to Dismiss this action (Dkt. No. 12), AeroFarms argues that FarmedHere assumed CityPonic's obligations under the Distribution Agreement. (Def's Mem. at 4-5.) AeroFarms emphasizes that the Distribution Agreement contains an arbitration clause, which requires FarmedHere to arbitrate, in New York, any claims or controversies relating to or arising out of the Distribution Agreement. (*Id.*)

AeroFarms, consequently, argues this court lacks jurisdiction to determine whether FarmedHere's claims must be arbitrated, based on Seventh Circuit precedent interpreting Section 4 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. 1, *et seq.*[2] AeroFarms seeks dismissal of the Complaint for improper venue, pursuant to Fed. R. Civ. Proc. 12(b)(3). (Def's Mem. at 6-9.)

---

[2] Section 4 of the FAA provides, in part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title

**LEGAL STANDARD**

In the context of a motion to dismiss for improper venue under Rule 12(b)(3), the

plaintiff bears the burden of proving that venue is proper. *See, e.g., Nathan v. Morgan Stanley*

*Renewable Dev. Fund, LLC*, No. 11-2231, 2012 WL 1886440, at *11 (N.D. Ill. May 22, 2012)

(Lefkow, J.). In making an improper venue determination, a "court may examine facts outside

the complaint", without converting the dismissal motion to a motion for summary judgment.

*First Health Grp. Corp. v. Sanderson Farms, Inc.*, No. 99-2926, 2000 WL 139474, at *2 (N.D.

Ill. Jan. 31, 2000) (Manning, J.); *see also Continental Gas Co. v. Am. Nat. Ins. Co.*, 417 F.3d

727, 733 (7th Cir. 2005) (holding district court may consider contract containing arbitration

clause in ruling on a motion to dismiss pursuant to Rule 12(b)(3)).

**ANALYSIS**

**1. FarmedHere and the Arbitration Agreement**

In support of AeroFarms' Motion to Dismiss, AeroFarms chiefly argues the following

points. Although federal courts interpret arbitration agreements to determine whether parties

agreed to arbitrate particular disputes, only a court in the district where the arbitration must occur

has jurisdiction to compel arbitration. (Def's Mem. at 6-9 (citing *Merrill Lynch, Pierce, Fenner*

*& Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995).) According to AeroFarms, because the

Distribution Agreement contains an arbitration clause requiring arbitration in New York, only a

New York court has jurisdiction to decide whether FarmedHere's claims belong in the JAMS

arbitration AeroFarms filed. (*Id*.)

---

28 . . . for an order that such arbitration proceed in the manner provided for in such agreement . .
. . The hearing and proceedings, under such agreement, shall be within the district in which the
petition for an order directing such arbitration is filed."

In contrast to a typical arbitration dispute, this case does not initially turn on whether the

parties agreed to arbitrate the claims at issue.  The parties, instead, dispute whether FarmedHere

is bound at all to the Distribution Agreement, or its arbitration clause by extension.  Throughout

FarmedHere's Complaint and Response (Dkt. No. 18), FarmedHere contends that it "never

entered into any [] agreement with AeroFarms" and "never signed the Distribution Agreement."

(Compl. ¶ 8; Pl's Resp. at 3.)  As discussed above, AeroFarms contends that FarmedHere

assumed the Distribution Agreement, benefited from AeroFarms' technology, and bound itself to

an arbitration provision conferring jurisdiction in New York.  *See supra* at 2-5.

As a result of the parties' positions, the court must make a threshold determination

whether FarmedHere should be bound to the Distribution Agreement.  The court is satisfied that

FarmedHere bound itself to the Distribution Agreement, for the limited purpose of deciding

whether the court has jurisdiction in this litigation.  This is not an instance where defendant seeks

dismissal for lack of jurisdiction, on account of an arbitration clause, against a third-party with a

tenuous connection to the underlying agreement.  The court is convinced, by the multitude of

facts and documents AeroFarms highlights, that the parties intended FarmedHere to assume

CityPonic's obligations under the Distribution Agreement.

First, Mr. Hardej explicitly asked AeroFarms to substitute FarmedHere for CityPonic in

at least one instance.  Mr. Hardej, again, utilized the non-existent entity CityPonic to enter into

the Distribution Agreement with AeroFarms.  (Cross-Petition, Ex. C.)  He then emailed

AeroFarms that same day representing that CityPonic would be created in short-order.  (*Id*.)

Instead, Mr. Hardej delayed creating a legal entity for months and later informed AeroFarms that

FarmedHere was being formed.  (*Id*., Ex. D.)  Disclosing this information was not an empty

gesture.  Mr. Hardej took this step to later request that AeroFarms substitute FarmedHere for

CityPonic in AeroFarms' billing invoices, which presumably reflected obligations originally assumed under the Distribution Agreement. (*Id*.)

Second, Mr. Hardej drafted a document where he clearly attempted to formalize FarmedHere's ability to exploit technologies AeroFarms provided Mr. Hardej under the Distribution Agreement. In a letter of intent dated September 9, 2011, Mr. Hardej wrote that FarmedHere intended (1) to "build either a larger single use system or a dual-system (aero-aquaponics) unit using the AeroFarm's technology and/or own aquaponic technology" and (2) to further use AeroFarm's technology "in the form of either the cloth growing surface spray system and/or specialized LED lighting." (*Id*.) In light of this letter of intent, the court rejects FarmedHere's attempts to portray the technologies AeroFarms provided Mr. Hardej as irrelevant to FarmedHere.

Third, FarmedHere's corporate address supports the court's conclusion. AeroFarms highlights documents, drafted with Mr. Hardej's input, that indicate CityPonic would have had the exact same corporate address as FarmedHere had CityPonic been formed. (Pl's Resp. at 2-3.) This fact standing alone would not necessarily have probative value. Here, however, it must be evaluated against the surrounding context described above—*i.e.*, Mr. Hardej asking for FarmedHere to step into CityPonic's shoes, Mr. Hardej attempting to formalize FarmedHere's use of AeroFarms' technology, *etc*. In such a context, the fact CityPonic would have been headquartered at FarmedHere's location, supports the conclusion FarmedHere was created in lieu of CityPonic. This indirectly supports a finding that FarmedHere may be bound to the Distribution Agreement due to Mr. Hardej's acts.

Considering the court is permitted to consider evidence outside the complaint in a Rule 12(b)(3) motion to dismiss, the court finds it telling that FarmedHere chose not to provide any

countervailing documents. FarmedHere, instead, largely responds by attempting to portray Mr. Hardej as a passive consultant, who coincidently entered into a prior agreement with AeroFarms to exploit its technology.

Despite FarmedHere's attempts to downplay Mr. Hardej's role in the company, the above documents persuade the court that Mr. Hardej was a key manager at FarmedHere. For example, Mr. Hardej went so far as to sign the September 9, 2011 letter of intent as FarmedHere's "Chief Executive Officer." (Cross Petition, Ex. F.) FarmedHere even admits that its aeroponic farming process was the result of Mr. Hardej "experimenting with aeroponic farming methods and shar[ing] his ideas with his ex-wife, Jolanta, and Steve, a former business associate." (Compl. ¶ 15.)

In sum, the totality of the documents and facts AeroFarms presents persuade the court that Mr. Hardej could and did bind FarmedHere to assume CityPonic's obligations under the Distribution Agreement. The court makes this threshold determination for the limited purpose of deciding whether it has jurisdiction in this litigation.[3]

---

[3] The court recognizes a potential critique of this holding. One could argue that it may incentivize future defendants to attempt the following. Defendants may utilize arbitration agreements, which mandate arbitration in other states, to argue courts lack jurisdiction over claims, where plaintiffs are third-parties with tenuous relationships to the arbitration agreements. However, as described above, this case does not fit this fact pattern, which is one the court would surely not countenance. Again, AeroFarms points to several specific documents demonstrating FarmedHere was formed in lieu of CityPonic, Mr. Hardej intended to bind FarmedHere to the Distribution Agreement, and Mr. Hardej's role at FarmedHere provided him the authority to do so.

In any event, the parties' procedural choices and positions necessitated provisionally deciding, for the purpose of jurisdictional analysis, whether FarmedHere was bound to the Distribution Agreement. If the court failed to reach this issue, but still dismissed the case due to the arbitration provision, the court may have absurdly dismissed FarmedHere's claims, based on an arbitration agreement it potentially had no legal connection to. Conversely, if the court failed to reach the issue of FarmedHere assuming the Distribution Agreement, and summarily dispensed

**2. The Court's Lack of Jurisdiction**

Having found it necessary to decide whether FarmedHere was bound to the Distribution

Agreement, and answering that question in the affirmative, the court proceeds to determine

whether this case must be dismissed for lack of jurisdiction. This court finds, under applicable

Seventh Circuit precedent, it lacks jurisdiction to determine whether FarmedHere's claims are

arbitrable. The Seventh Circuit has held on multiple occasions that only a court within the

district in which an arbitration is to be held, here New York, may determine whether a claims are

arbitrable.

In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir.

1995), the Seventh Circuit held that Section 4 of the FAA, "requires a geographical link between

the site of the arbitration and the district which, by compelling arbitration or directing its scope

exercises preliminary control." Furthermore, in construing "Section 4 as a restriction on the

authority of nonforum courts", the Seventh Circuit concluded "where [an] arbitration agreement

contains a forum selection clause, only the district court in that forum can issue a Section 4 order

compelling arbitration." *Id*. The Seventh Circuit based this decision on the fact that

"[i]ntervention from the Northern District of Illinois court" would "simply add[] another layer"

of procedural complexity to case, where "parallel proceedings" could be avoided and "the

conservation of judicial resources" could be promoted. *Id*. at 330.

In numerous other decisions, the Seventh Circuit and courts in the Northern District of

Illinois have concluded that Section 4 of the FAA precludes a district court from compelling

arbitration in other districts, or its own, when an agreement compels arbitration in another forum.

*See, e.g., Faulkenberg v. CB Tax Franchise Sys. LP*, 637 F.3d 801, 810-12 (7th Cir. 2011)

---

with AeroFarms' Motion to Dismiss, the court would potentially be keeping claims it lacked
jurisdiction over under applicable Seventh Circuit precedent. *See infra* at 10-11.

(dismissing under Rule 12(b)(3) for improper venue where agreement contained valid arbitration clause requiring arbitration in foreign jurisdiction); *Continental Gas Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733-35 (7th Cir. 2005) (same); *EZLinks Golf, Inc. v. Brown*, No. 12-3630, 2013 WL 1285651, at *2 (N.D. Ill. Mar. 27, 2013) (Coleman, J.) (same).

The court has analyzed FarmedHere's contrary arguments and finds them unpersuasive. First, FarmedHere complains that its claims in this litigation are not currently being considered in the New York Action, where FarmedHere has sought to stay AeroFarms' JAMS arbitration. (Pl's Resp. at 1-2.) However, FarmedHere admits it chose not to "ask the New York Court to decide the arbitrability of any of FarmedHere's defenses or claims against AeroFarms". (*Id*. at 2.) Given that FarmedHere filed this and the New York Action, FarmedHere could have asked the New York Court to consider if its claims should be arbitrated. That FarmedHere opted for the procedural complexity of opening two parallel proceedings, in addition to AeroFarms' JAMS arbitration, does not alter this court's jurisdictional analysis.[4]

FarmedHere, next, attempts to distinguish the body of case law AeroFarms relies upon, by arguing that in multiple cases it was undisputed that the parties entered into a valid arbitration agreement. (*Id*. at 5-6.) As discussed above, this court agrees with FarmedHere that, in order for the court to evaluate its jurisdiction, it was required to make a threshold determination on

---

[4] FarmedHere's introduction of this procedural complexity is particularly inexcusable, considering review of the above cases demonstrates a straightforward way FarmedHere could have pursued its claims. *See supra* at 10-11. After FarmedHere refused to arbitrate in New York, it simply could have waited for AeroFarms to bring suit in the Southern District of New York, seeking to compel arbitration under Section 4 of the FAA. There, FarmedHere could have fought being compelled to arbitrate, while at the same time pursuing its claims as counterclaims. Alternatively, FarmedHere could have sought to stay the JAMS arbitration, while arguing its claims should proceed there, in the event a Southern District of New York court refused the stay. Instead, within a month of AeroFarms demanding arbitration, FarmedHere chose to go on the offensive, by separately filing its claims in this action and seeking a stay in the New York Action.

whether FarmedHere was bound to the Distribution Agreement. *See supra* at 6-9. Because the

court has answered this question in the affirmative, FarmedHere's attempt to distinguish this

body of case law is moot.

### 3. Dismissal Without Prejudice

This court is aware that the New York court could render multiple rulings that may

prevent FarmedHere's claims from being adjudicated at all. FarmedHere could attempt to bring

its claims as counterclaims in New York, and the New York court could decline to consider them

at the current stage of the New York Action. FarmedHere could maintain that the JAMS

arbitration should be stayed, while alternatively arguing its claims should be heard, in the event

that the arbitration proceeds. In response, the New York court could either completely stay the

arbitration, or compel it without sweeping in FarmedHere's claims.

Because the New York Action may not lead to FarmedHere's claims being heard before

JAMS, this court dismisses the Complaint without prejudice. If FarmedHere's claims are not

heard in the JAMS proceeding, because of a determination of the court in the New York Action,

FarmedHere may seek by motion to refile its claims, and the court will address that motion.

### CONCLUSION

For the reasons set forth above, AeroFarms' "Motion to Dismiss Plaintiff's Complaint

or, Alternatively, to Stay this Action pursuant to Fed. R. Civ. Proc. 12(b)(3)" is granted. Counts

I-III of FarmedHere's complaint (Dkt. No. 1) are dismissed without prejudice.

In ruling on a motion to dismiss for improper venue under Rule 12(b)(3), the court is

permitted to look outside the record. Documents properly before the court establish, for the

purpose of this court's jurisdictional analysis, that FarmedHere is bound to the Distribution

Agreement. Because the Distribution Agreement contains an arbitration clause, mandating

arbitration in New York, this court currently lacks jurisdiction to here FarmedHere's claims.

If FarmedHere's "Petition for Stay of Arbitration in the Supreme Court for the State of

New York" (Dkt. No. 13, Ex. 1, Susman Decl. at Ex. 2), does not result in FarmedHere's claims

being heard before JAMS, due to a determination of the court in the New York Action,

FarmedHere may seek by motion to refile its claims, and the court will address that motion.

Civil case terminated.

ENTER:

_James F. Holderman_

JAMES F. HOLDERMAN
United States District Judge

Date:   June 16, 2014